Debra L. **HERR**, Plaintiff,

v.

**AIRBORNE FREIGHT CORPORATION**, Defendant.

No. 4:95CV02355 GFG.

United States District Court, E.D. Missouri, Eastern Division.

Dec. 31, 1996.

274

David O. Danis, Partner, Andrew T. Pickens, Danis and Cooper, St. Louis, MO, for plaintiff.

Anthony J. Sestric, Sr., Managing Partner, Sestric and Garvey, St. Louis, MO, for defendant.

### MEMORANDUM AND ORDER

GUNN, District Judge.

This employment discrimination case is before the Court on defendant's motion for summary judgment and plaintiff's opposition thereto. Documents 21, 28, and 29. Plaintiff has filed a motion to strike defendant's reply to plaintiff's response to the motion for summary judgment. Document 30. For the reasons set forth below, defendant's motion for summary judgment is **GRANTED,** and plaintiff's motion to strike is **DENIED.**

1. A "casual courier" is a driver who fills in when a permanent employee is unavailable for any reason. Casual couriers have no guaranteed

## I. Background

Plaintiff Debra L. Herr filed this sex discrimination action under Title VII, 42 U.S.C. § 2000e, *et seq.,* and the Missouri Human Rights Act ("MHRA"), Mo.Ann.Stat. § 213.010, *et seq.,* against her former employer, defendant Airborne Freight Corporation ("AFC" or "defendant"). Document 1. AFC hired plaintiff as a casual courier [1] on May 6, 1992. She last worked for AFC on May 21, 1992. Document 28, exh. B at 29. Plaintiff alleges that although she remained available for work and AFC had work available, AFC refused to provide work for her to perform because of her gender. Document 1 at 2–3.

AFC now moves for summary judgment, arguing that plaintiff was terminated as a casual courier because she performed inadequately during her 30–day probationary period by failing to complete the deliveries assigned to her. Document 21 at 2. Plaintiff concedes that she did not complete the deliveries on time on at least one occasion. Document 28, exh. B at 22. But plaintiff argues that (1) AFC hired her with no intention of giving her any work; (2) AFC provided her with inadequate training and expected her to meet unrealistic goals; and (3) AFC treated male employees less harshly for unsatisfactory performance. Document 28 at 2–3.

## II. Discussion

Summary judgment shall be entered if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In ruling on a motion for summary judgment, this Court views the evidence and all reasonable inferences which may drawn therefrom in the light most favorable to the nonmoving party. *See Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 775 (8th Cir. 1995). In response to a properly supported

number of hours per day or days per week to work. Document 21, Bruer depo. at 53.

motion, the nonmoving party must set forth specific facts, by affidavit or other evidence, which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

The Eighth Circuit has cautioned that "summary judgment should seldom be granted in employment discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994). But summary judgment must be granted when a plaintiff fails to create a genuine issue of fact as to whether an employer's reason for a termination is a pretext for discrimination. *See Hutson,* 63 F.3d at 777.

In the absence of direct evidence of discrimination, the burden shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to sex discrimination cases brought under both Title VII and the MHRA. *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 510 (8th Cir.1995). Here, the record reveals that plaintiff has no direct evidence of discrimination, and the parties have argued the case under the *McDonnell Douglas* framework.

Under *McDonnell Douglas,* plaintiff has the initial burden of establishing a prima facie case of sex discrimination. For the sake of argument, defendant assumes that plaintiff can make a prima facie showing. Document 21. The burden thus shifts to defendant to produce evidence that plaintiff was terminated for a legitimate, nondiscriminatory reason. If defendant discharges this burden, then plaintiff must prove that defendant's asserted reason is merely a pretext for discrimination. *Karcher v. Emerson Elec. Co.,* 94 F.3d 502, 507 n. 2 (8th Cir.1996).

Defendant has articulated a legitimate, nondiscriminatory reason for the termination—plaintiff's poor performance—and has produced evidence in support of its position. Jeff Bruer, plaintiff's supervisor, testified that plaintiff was terminated from the list of employees during her initial 30–day trial period because of unsatisfactory work performance. Bruer depo. at 17–18. Bruer stated that after two days of training, which consisted of riding along with a more experienced driver to learn the route, plaintiff failed to complete delivery of all packages assigned to her route. *Id.* at 42–43. Bruer testified that this happened at least two days in a row. *Id.* at 43–44. Bruer testified that after plaintiff failed to complete her route on two consecutive days, he decided plaintiff would not make the grade as a courier. *Id.* at 44. Bruer noted that the route plaintiff drove was one of AFC's easier routes. *Id.* A form titled "Termination Advice" states that plaintiff was terminated for unsatisfactory job performance and lists plaintiff's last day of work as May 21, 1992. Document 28, exh. C.[2] Plaintiff concedes that on at least one occasion, she was unable to complete all deliveries assigned to her. *Id.,* exh. B at 21–22.

 In view of this evidence, the Court must determine whether plaintiff has created a genuine issue of fact on the question of pretext and on the ultimate issue of intentional discrimination. A plaintiff can avoid summary judgment at the pretext stage of *McDonnell Douglas* by establishing "the existence of facts which if proven at trial would permit a jury to conclude that the defendant's proffered reason is pretextual and that intentional discrimination was the true reason for the defendant's actions." *Krenik v. County of LeSueur,* 47 F.3d 953, 958 (8th Cir.1995); *see also Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1335–37 (8th Cir.1996) (explaining ADEA plaintiff's burden at pretext stage of summary judgment). "The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff." *Rothmeier,* 85 F.3d at 1337.

 In support of her claim of pretext, plaintiff first asserts that AFC hired her with

2. Plaintiff suggests that defendant fabricated this form, but provides no evidence to support this suggestion.

no intention of giving her any work. Document 21 at 2. In her deposition, plaintiff testified that in March of 1994, Rich Hagler, a driver for AFC and the Union shop steward, told her that she was "an illusion" and that AFC never intended to provide work for plaintiff. Document 28, exh. B at 69–70. Plaintiff further testified that she did not know how Hagler reached this conclusion, that she had never met Hagler before, and that Hagler did not explain how he knew that AFC did not intend to give her work. *Id.* at 72–76.

■ Plaintiff's testimony regarding Hagler's statements is hearsay and, under Fed. R.Civ.P. 56(e), cannot be used to defeat a motion for summary judgment. *See Wilder v. Southeastern Pub. Serv. Auth.,* 869 F.Supp. 409, 416 (E.D.Va.1994) (holding plaintiff's deposition testimony that co-employee made statement attributing racial animosity to supervisor inadmissible to oppose summary judgment), *aff'd,* 69 F.3d 534 (4th Cir.1995) (Table). Moreover, the record does not provide the factual basis for Hagler's statements, and plaintiff has no personal knowledge as to AFC's alleged intent. Accordingly, the Court finds no competent evidence to support plaintiff's assertion. *See id.*

Plaintiff next contends that AFC provided her with inadequate training and expected her to meet unrealistic goals. In support of this contention, plaintiff relies on her own deposition testimony and the affidavit of former co-worker Paula Cox. Document 28 exhs. B at 18–22, D at ¶¶ 5–10. The Court will assume without deciding that plaintiff and Ms. Cox are qualified to give opinions on the adequacy of the training they received from AFC and on whether the goals AFC set for probationary employees were realistic. However, even assuming the training was inadequate and the goals were unrealistic, plaintiff has produced no evidence to show that male probationary employees received better training or that male probationary employees were not expected to meet the same goals. Accordingly, this evidence fails to give rise to an inference of discriminatory intent on the part of AFC. *See Shannon v. Ford Motor Co.,* 72 F.3d 678, 683 (8th Cir. 1996) (plaintiff must show that similarly situated individuals were treated differently to prove intentional discrimination).

Plaintiff maintains that by terminating her for failing to complete her deliveries AFC treated her more harshly than its male employees who committed similar or more serious errors. Document 28 at 7–10. Plaintiff has submitted a number of exhibits which demonstrate that male employees of AFC were warned but retained after committing similar or even more severe misconduct. *Id.,* exhs. F–M. In order for this evidence to create an issue of fact as to pretext, however, plaintiff must show that the male employees who received more favorable treatment were similarly situated in all relevant respects to plaintiff. *See Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 972–73 (8th Cir.1994); *Jones v. Frank,* 973 F.2d 673, 676–77 (8th Cir.1992).

AFC argues that plaintiff cannot meet this burden. AFC asserts that plaintiff was hired as a probationary casual courier on May 6, 1992, that she remained in that status up to the time she was terminated, and that she is comparing her treatment to the treatment given to permanent male employees who are covered by a union contract. Document 29 at 4–7. The union contract provides for progressive discipline for permanent employees, including written warnings prior to disciplinary action. *Id.,* Threadgill affidavit, exhs. A and B, Article 46. All of the men listed in plaintiff's exhibits are permanent employees. *Id.,* Threadgill aff. at ¶¶ 7–9. Accordingly, AFC argues that plaintiff is not similarly situated to these permanent male employees.

After carefully reviewing the record, the Court agrees with AFC. Plaintiff was hired as a probationary casual courier on May 6, 1992. Document 28, exh. A. Plaintiff testified that May 21, 1992, was the last day she could recall working. Document 28, exh. B at 28–29. Plaintiff acknowledged that AFC has a 30–day period of probation for new employees. *Id.* at 30, 44. The union contract in effect at the time specifically provided for the 30–day probationary period. Document 29, Threadgill affidavit, exh. A Article 41. Company records reflect that plaintiff was terminated on May 21, 1992. Document 28, exh. C.

Plaintiff's deposition testimony, however, conflicts with defendant's records. Plaintiff testified that when she returned to AFC on May 21, 1992, Bruer told her that she had done a good job, that her probationary period was over, and that she should call in the following Monday to find out when to return to work. *Id.* at 29.[3] Plaintiff therefore maintains that she became a permanent rather than a probationary employee. But plaintiff's unsubstantiated deposition testimony regarding her conversation with Bruer is insufficient to create an issue of fact as to her employment status. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir.1994) (affirming summary judgment for defendant where plaintiff's evidence as to disparate treatment consisted solely of his unsubstantiated deposition testimony).[4] Thus, the Court concludes that plaintiff has failed to establish that she was similarly situated to the permanent male employees who received more lenient treatment. Accordingly, plaintiff has failed to carry her burden of creating a genuine issue of material fact on the question of pretext or on the ultimate issue of sex discrimination.

The Court further observes that Jeff Bruer both hired and fired plaintiff. When the same individual both hires and fires an employee and the termination occurs within a relatively short period following the hiring, there is a strong inference that discrimination was not a determining factor in the adverse employment decision. *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991). Courts following this rule reason that it would be irrational for employer animus to exist in termination but not in hiring. *Id.* (quoting Donahue & Siegelman, *The Changing Nature of Employment Discrimination Litigation*, 43 Stan.L.Rev. 983, 1017 (1991)).

The Eighth Circuit has applied this rule in age discrimination cases, *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 175 (8th Cir.

1992), but the Court is unaware of any Eighth Circuit decision applying it in a sex discrimination case. The Sixth Circuit recently applied the rule in a sex discrimination case, concluding that the "general principle applies regardless of whether the class is age, race, sex, or some other protected classification." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 785, 133 L.Ed.2d 736 (1996). The Court agrees with this conclusion and believes that application of the rule in this case further undermines plaintiff's claim of sex discrimination. *See, e.g., Lowe,* 963 F.2d at 175 (finding "incredible" that company officials who hired plaintiff at age 51 suddenly developed aversion to older people two years later).

Finally, plaintiff has moved to strike defendant's reply to her response to defendant's motion for summary judgment on the ground that defendant submitted evidence not referred to or relied on in its initial submission. Alternatively, plaintiff maintains that she should be afforded an opportunity to respond to this additional evidence, and in her memorandum in support of her motion, attacks the validity of defendant's evidence. Document 30. Upon review of the plaintiff's motion and defendant's response, the Court concludes that plaintiff's motion to strike lacks merit and that plaintiff has had an adequate opportunity to respond to defendant's motion for summary judgment. Accordingly, the Court will deny plaintiff's motion.

### III. Conclusion

After careful review of the record, the Court concludes that summary judgment for defendant is warranted because plaintiff has failed to carry her burden of establishing the existence of a genuine issue of material fact on the question of pretext or on the ultimate issue of sex discrimination. A separate judg-

---

3. Plaintiff further testified that she called into AFC a number of times after May 21, but was told that there was no work available. *Id.* at 45–47. Plaintiff testified that up until March of 1994, she believed that she was employed by AFC as a casual driver and was simply waiting for a shift. *Id.* at 70.

4. The Court recognizes that in her affidavit, Paula Cox stated that she was never informed by AFC that she had been terminated. Document 28, exh. D, ¶ 20. But Cox's affidavit does not corroborate plaintiff's testimony regarding the conversation with Bruer and does not support plaintiff's claim of pretext.

ment will accompany this memorandum and order.

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment, Document 21, is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's motion to strike, Document 30, is **DENIED.**

**IT IS FURTHER ORDERED** that all pending motions are **DENIED** as moot.